UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FADEEL SHUHAIBER,<br><br>        Plaintiff,<br><br>    v.<br><br>DR. SOOD, DIANE SCHWARZ,<br>FORMER WARDEN PFISTER, and<br>WARDEN NICHOLSON,<br><br>        Defendants. | Case No. 18-cv-1370<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Fadeel Nahil Shuhaiber, previously incarcerated at Stateville, sued the current and former wardens, as well as numerous doctors and nurses working there under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights when they acted with deliberate indifference in treating his celiac disease. The Warden Defendants (former Warden Pfister and Warden Nicholson) and the remaining medical Defendants (Dr. Kul Sood and Diane Schwarz, P.A., hereinafter the "Wexford Defendants") separately move for summary judgment. [260], [263].[1]

    For the reasons explained below, this Court grants the Warden Defendants' motion for summary judgment and denies the Wexford Defendants' motion for summary judgment.

---

[1] Plaintiff initially sued numerous other Defendants but voluntarily dismissed those parties on December 1, 2022. *See* [249], [250].

1

I.  **Background**[2]

Plaintiff entered the custody of the Cook County Sheriff's Office on October 29, 2015, in the Cook County Jail. [277] ¶ 20. On February 17, 2016, Plaintiff saw Cook County doctor, Dr. Paul, for abdominal pain, diarrhea, and poor appetite. *Id.* ¶ 21. Subsequent testing showed that Plaintiff screened positive for celiac disease. *Id.* ¶¶ 21–22. Gastroenterologists Dr. Yap, Dr. Vettiankal, and Dr. Jaiswal diagnosed Plaintiff with celiac disease on May 26, 2016. [292] ¶ 10. At that time, Dr. Jaiswal ordered a dietary consult and told Plaintiff to avoid certain foods. [264-7] CCSAO SHUHAIBER 005296. On June 24, 2016, Plaintiff received education about celiac disease, and his medical provider, P.A. Pokula, ordered a dietary consult. [277] ¶ 25. On July 15, 2016, P.A. Trammell evaluated Plaintiff to learn about his celiac diagnosis. [292] ¶ 11.

On July 28, 2016, Dr. Paul noted that Plaintiff requested to change his diet from a wheat allergy diet to a regular diet as Plaintiff would "manage his diet by himself alongside the new diagnoses of Celiac's [sic] disease." [277] ¶¶ 28, 29. At a gastroenterology follow-up appointment on August 25, 2016, Dr. Jaiswal recorded that Plaintiff has been "trying to avoid gluten-rich food." *Id.* ¶ 30; [264-7] CCSAO SHUHAIBER 005287. Plaintiff's medical records from August 2016 and August 2017

---

[2] All parties filed a statement of undisputed facts in support of their motions for summary judgment pursuant to L.R. 56.1(a). *See* [261]; [264]; [275]; [278]. In their responses, the parties have asked the Court to strike several paragraphs from the opposing party's statements of undisputed facts, alleging, among other things, misrepresentation of evidence, failure to support facts with adequate citations, irrelevance, and improper legal arguments. [274]; [277]; [289]; [292]. The Court declines to make any ruling regarding specific paragraphs and rather draws the facts from the clearly undisputed facts and underlying exhibits, disregarding any unsubstantiated or argumentative asserted facts. *See Cady v. Sheahan*, 467 F.3d 1057, 1060–61 (7th Cir. 2006).

note his celiac diagnosis and include various updates regarding his symptoms and interest in following a gluten-free diet. *See, e.g.*, [264-7] at CCSAO SHUHAIBER 001089, 001110, 005287. The notes from medical providers show that Plaintiff's commitment to pursuing a gluten-free diet wavered. *Id.* On August 2, 2017, Plaintiff was hospitalized for chest pain. [292] ¶ 12. Plaintiff's discharge papers stated he required a gluten-free diet. *Id.* ¶ 13.

On August 7, 2017, Plaintiff entered Illinois Department of Corrections ("IDOC") custody at Stateville NRC. [277] ¶ 46. At that time, Randy Pfister served as Warden, also known as a chief administrative officer. [289] ¶ 12. Warden Pfister worked as warden until January 31, 2018, and was replaced by Walter Nicholson on March 1, 2018. [274] ¶¶ 2, 3. Plaintiff never had any direct interactions with either Warden. *Id.* ¶¶ 7, 8. On August 7, 2017, Diane Schwarz, a Physician's Assistant at Stateville, completed Plaintiff's intake and physical examination. [277] ¶ 46. P.A. Schwarz did not record any mention of Plaintiff's celiac disease, though Plaintiff claims he disclosed his condition during the intake process. [292] ¶ 16. P.A. Schwarz did not receive any medical records regarding Plaintiff's medical history. [277] ¶ 48. Plaintiff saw Dr. Kul Sood, a medical doctor at Stateville NRC, on September 30, 2017, and December 8, 2017; neither appointment recorded any history of celiac disease, though Dr. Sood noted that he discussed Plaintiff's history of diabetes and hypertension. *Id.* ¶¶ 55, 57; [292] ¶ 17. Nevertheless, Plaintiff claims Dr. Sood was aware of his celiac disease; Dr. Sood disputes this claim. *See* [292] ¶ 6, 21. Neither

3

P.A. Schwarz nor Dr. Sood ever requested Plaintiff's medical records from Cook County. *Id.* ¶ 5.

On December 25, 2017, Plaintiff submitted a grievance claiming that he told Schwarz during the intake appointment about his celiac disease and his need to follow a gluten-free diet. [277] ¶ 59. In the grievance, Plaintiff stated that he discussed his need for a gluten-free diet with "Michelle" at Stateville, and Michelle told him the facility does not offer a gluten-free diet so he would have to "deal with whatever" he receives. [282-5] at IDOC000140. Plaintiff requested either a gluten-free diet or a transfer to a facility that could accommodate his dietary needs. *Id.* at IDOC000140-41.

On January 1, 2018, Plaintiff submitted another grievance again requesting a different diet. [292] ¶ 20. Warden Pfister and Nicholson do not personally review or sign inmate grievances; they instead delegate this task to assistant wardens who can sign documents on the Warden's behalf. [289] ¶ 15. Additionally, Warden Pfister and Nicholson always deferred and delegated any inmate medical decisions to the Health Care Unit staff. [274] ¶¶ 21, 22. Plaintiff never received a response to either grievance from Warden Pfister or Nicholson. *Id.* ¶¶ 13, 14.

On January 27, 2018, Plaintiff visited Dr. Sood again for pain. [277] ¶ 61. Dr. Sood states that Plaintiff revealed his celiac diagnosis for the first time at this appointment. *Id.* ¶ 61. Dr. Sood prescribed Plaintiff Tylenol. [292] ¶ 21. Plaintiff visited Dr. Sood one month later on February 27, 2018, complaining of diarrhea for

4

the previous 60 days. [277] ¶ 63. Dr. Sood prescribed Imodium, Bentyl, and fluids. *Id.*

On March 4, 2018, Plaintiff filed a grievance complaining of severe abdominal pain, diarrhea (more than ten times a day), and vomiting for more than 2 months. [292] ¶ 23. Plaintiff stated that the medications prescribed by Dr. Sood did not help due to his celiac disease. [282-5] at IDOC000240–41. Plaintiff additionally claimed that no one believed his celiac diagnosis since they never requested his prior medical records. *Id.*

On March 15, 2018, Plaintiff saw P.A. Schwarz and shared that his diet changed to vegan on January 17, 2018, but that his stomach pain persisted. [277] ¶ 65. Plaintiff requested a gluten-free diet, but P.A. Schwarz told Plaintiff to return to the regular diet and prescribed Pepcid, Bentyl, and Folic acid. [264-12] at Lawrence CC MR 000051–52.

On May 9, 2018, Plaintiff filed a grievance claiming that P.A. Schwarz never obtained his medical records and additionally requesting a celiac blood test. [292] ¶ 29. On July 27, 2018, Plaintiff moved to Lawerence Correctional Center. [277] ¶ 71. On May 2, 2019, Immigration and Customs Enforcement took custody of Plaintiff, and he was deported from the United States on March 10, 2021. *See id.* ¶ 6; [264-1] 177:12–17.

For incarcerated patients, the standard of medical care remains similar to non-incarcerated patients. [292] ¶ 3. The National Commission on Correctional Health Care ("NCCHC") sets nationally accepted standards of care for patients in jails and

5

prisons. *Id.* In 2018, the NCCHC stated it "is important to review past health records . . . If these records have not been received at the time of the initial health assessment, they should be requested after receiving a signed release from the inmate." *Id.* ¶ 4. The Wexford Defendants deny that the standard of care requires the review of past medical records in order to treat patients. *Id.* ¶¶ 4, 5.

Celiac disease "is a common immune-mediated inflammatory disorder of the small intestine due to sensitivity to dietary gluten." *Id.* ¶ 7. Celiac disease, if not treated, may "result in malabsorption, the consequences of which include weight loss, anemia, neurological disorders, osteopenia," and an "increased risk of lymphoma and gastrointestinal cancer." *Id.* ¶ 9. According to Plaintiff's expert, Dr. Lawerence, treatment of celiac disease requires a gluten-free diet and counseling with a registered dietitian experienced with celiac disease. *Id.* ¶ 8. At no time did Dr. Sood or P.A. Schwarz prescribe Plaintiff a gluten-free diet, *id.* ¶ 34, though Dr. Sood acknowledged the dangerous effects of untreated celiac disease, including malnutrition and nervous system problems, *id.* ¶ 9. According to Defendant's expert, Dr. Tubbs, the medical standard of care does not require that inmates with celiac disease receive a gluten-free diet nor a diet consultation. *See* [264-5] 22:24–23:2, 29:21–25. Dr. Tubbs also opined that reasonable medical minds can differ about whether the proper medical treatment for celiac disease requires a gluten-free diet. *Id.* 23:11–15.

Plaintiff filed this suit on February 22, 2018. [1]. After amendments, challenges, and a stipulation of dismissal, two claims remain: his claim against the

6

Warden Defendants for allegedly ignoring his grievances about his diet in violation of the Eighth Amendment; and his claim against the Wexford Defendants for failure to provide adequate medical care in violation of the Eighth Amendment. *See* [30], [31], [249], [250]. All Defendants now move for summary judgment. [260], [263].

## II. Legal Standard

A party seeking summary judgment must show that there exists no genuine "dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323. In evaluating a motion for summary judgment, the Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party but a mere "scintilla of evidence" supporting the non-movant's position does not suffice. *Anderson*, 477 U.S. at 252, 255. Instead, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id*. at 252.

## III. Discussion

Prison officials violate an inmate's rights under the Eight Amendment if they act with "deliberate indifference" to an inmate's "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Courts utilize a two-step analysis to

7

determine whether the Eighth Amendment has been violated in the prison medical context: first, the Court examines "whether a plaintiff suffered from an objectively serious medical condition" and, second, determines "whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing *Farmer*, 511 U.S. at 834).

### A. Warden Defendants

To prevail on his § 1983 claim against the Warden Defendants, Plaintiff must demonstrate that Wardens Pfister and Nicholson were "personally responsible" for the alleged deprivation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The Warden Defendants argue that they were not personally involved in the alleged deprivation of Plaintiff's constitutional right, and so a judgment in their favor remains appropriate. Liability under § 1983 remains "premised upon the wrongdoer's personal responsibility"; an individual "cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Kuhn v. Goodlow*, 678 F.3d 552, 555–56 (7th Cir. 2012). Prison officials like Warden Pfister and Nicholson satisfy the personal responsibility requirement of § 1983 "if the conduct causing the constitutional deprivation occurs at the official's direction or with his or her knowledge and consent." *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (citing *Gentry*, 65 F.3d at 561).

Though the record shows Plaintiff made requests through the grievance process regarding treatment for his celiac disease, no evidence exists showing that the Warden Defendants ever personally participated in, or knew of, Plaintiff's alleged

8

constitutional violation. Plaintiff concedes that neither Warden personally reviewed Plaintiff's grievances, [289] ¶ 15, and Plaintiff fails to provide any evidence that either Warden had personal knowledge of Plaintiff's grievances. Rather, the Warden Defendants lawfully delegated their responsibility to review inmate grievances, as permitted under Illinois law. *See* 20 Ill. Adm. Code 504.805(a); *Dupree v. Hardy*, 960 N.E.2d 1, 8 (Ill. App. Ct. 2011) (holding that a director can delegate review of an inmate's grievance appeal because director is not personally required to review appeals); *Birch v. Jones,* 02-cv-2094, 2004 WL 2125416, at *7 (N.D. Ill. Sept. 22, 2004) ("The warden 'may delegate his duty to review inmate grievances.'") (quoting *Goodman v. Carter*, No. 00-cv-0948, 2001 WL 755137, at *5 (N.D. Ill. Jul. 2, 2001)).

Plaintiff offers no evidence or supported argument to suggest that either Wardens' delegation resulted in a knowing violation of or reckless indifference to Plaintiff's constitutional rights. Therefore, the Court grants the Warden Defendants' motion for summary judgment, [260]. *See Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022) (finding summary judgment for defendants appropriate where "no reasonable jury could conclude" that supervisor defendants "were personally involved" or "facilitated, approved, or turned a blind eye" to the constitutional violation).

### B. Wexford Defendants

The Wexford Defendants concede that Plaintiff's celiac disease qualifies as an objectively serious condition, but they dispute whether their actions rise to the high standard of deliberate indifference. [265] at 4.

9

Deliberate indifference requires that the prison official "acted with a 'sufficiently culpable state of mind,' meaning the official knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Goodloe v. Sood*, 947 F.3d 1026, 1030–31 (7th Cir. 2020). Since this evaluation involves the official's subjective state of mind, officials "can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety." *Petties*, 836 F.3d at 728 (first citing *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996); and then citing *Farmer*, 511 U.S. at 844). Deliberate indifference constitutes a high standard; a plaintiff must produce evidence of more than traditional malpractice or mere negligence (or even objective recklessness). *Id.* (first citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); then citing *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013); and then citing *Farmer*, 511 U.S. at 836–38).

Generally, a medical professional is also "entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (quoting *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)). If a prison medical professional's "decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently." *Clemons v. Wexford Health Sources, Inc.*, 106 F.4th 628, 635 (7th Cir. 2024). Even so, "where evidence exists that the defendants knew better than to make the medical decisions that they did, a jury should decide whether or not the defendants were actually ignorant to [the] risk of the harm that they caused." *Id.*

(alteration in original) (quoting *Petties*, 836 F.3d at 730–31). This evidence may include "the obviousness of the risk from a particular course of medical treatment; the defendant's persistence in a course of treatment known to be ineffective; or proof that the defendant's treatment decision departed so radically from accepted professional judgment, practice, or standards." *Id.* at 635–36 (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 663 (7th Cir. 2016)).

Plaintiff lists several ways that Dr. Sood and P.A. Schwarz acted with deliberate indifference to his medical needs: (1) failing to prescribe Plaintiff a gluten-free diet; (2) failing to refer Plaintiff to a specialist for testing and consultation regarding his celiac disease; and (3) failing to obtain Plaintiff's medical records. But these assertions all relate to the same issue: Plaintiff did not receive a gluten-free diet prescription.

**1. Gluten-free Diet**

As noted above, the parties dispute when Dr. Sood and P.A. Schwarz learned of Plaintiff's celiac disease. According to Plaintiff, he informed P.A. Schwarz of his celiac diagnosis at his first intake, but Dr. Sood claims Plaintiff disclosed that he had celiac disease for the first time on January 28, 2017. From the intake appointment until January 2017, Dr. Sood and P.A. Schwarz provided no treatment in connection with Plaintiff's celiac disease. Even when Plaintiff supposedly revealed his celiac diagnosis in January 2017, Plaintiff claims that the subsequent treatment constituted deliberately indifferent medical care.

11

The parties' experts also disagree about the proper assessment of Dr. Sood's and P.A. Schwarz's treatment starting in January 2017 (which largely treated Plaintiff's symptoms but never prescribed a gluten-free diet), and whether this treatment ostensibly departed from the accepted medical standard. Plaintiff's expert, Dr. Lawerence, stated that "celiac disease is treated solely by diet, and a gluten-free diet." [314] at 19. Dr. Sood himself acknowledged that "only the gluten-free diet" exists as a treatment for celiac disease itself, [264-3] 106:9–11, allowing a reasonable jury to infer that Dr. Sood may have subjectively known that Plaintiff's treatment required a gluten-free diet.[3] Although the Wexford Defendants' expert, Dr. Tubbs, opined that reasonable medical minds could differ about whether a gluten-free diet remains the only proper treatment for celiac's disease, [264-5] 23:11–15, this opinion further illustrates the existence of a genuine issue of material fact regarding the bounds of appropriate medical treatment for celiac disease and how this relates to the Defendants' state of mind.

The Wexford Defendants argue that Stateville did not offer a gluten-free diet option. But if, as asserted by Plaintiff, Dr. Sood and P.A. Schwarz should have prescribed a gluten-free diet, Stateville's limited dietary options do not dispose of the issue. Dr. Sood himself stated that IDOC could provide dietary accommodations when medically necessary, again showing that a reasonable jury could find that Dr.

---

[3] Plaintiff received a vegan diet or regular diet during this period, but Dr. Lawerence explained that a vegan diet could contain traces of gluten and cannot substitute for a true gluten-free diet. [314] at 22 ("[T]o avoid contamination by gluten-containing foods, gluten-free diets must be prepared in a special kitchen that is completely free of any gluten. For this reason, switching food with one's cellmate or leaving behind bread/wheat products on a regular diet tray is a totally inadequate solution to the need for gluten-free diet.").

12

Sood had the power to prescribe Plaintiff a gluten-free diet. [264-3] 82:12–16. The record remains clear that Dr. Sood and P.A. Schwarz neither prescribed a gluten-free diet nor advocated to transfer Plaintiff to a facility that could meet his medical need for a gluten-free diet. By failing to do so, Dr. Lawerence opines that these actions were "an extreme deviation from the standard of care." [314] at 20. Considering the facts most favorably to the Plaintiff, a reasonable jury could conclude that Dr. Sood and P.A. Schwarz did radically depart from accepted medical standards by failing to prescribe Plaintiff a gluten-free diet, and thus, based on the record as a whole, acted with deliberate indifference.

Even though Plaintiff did not report any celiac-related symptoms before January 28, 2017, he did complain of stomach pain at that appointment, and, a month later, Plaintiff reported diarrhea for the past 60 days. If Dr. Sood and P.A. Schwarz were aware of Plaintiff's celiac disease prior to January 27, 2018, they may have been obligated, based upon the standard of medical care, to investigate the possibility of celiac and to prescribe a gluten-free diet to prevent disease-related symptoms. *See* [314] at 14. Viewing the facts in a light most favorably to the Plaintiff, a reasonable jury could find that the actions of Dr. Sood and P.A. Schwarz constituted deliberate indifference to Plaintiff's condition, not only in their treatment after January 27, 2018, but starting at Plaintiff's intake appointment in August 2017.

Consequently, a genuine issue of material fact exists regarding the appropriate medical care for celiac disease and whether Dr. Sood's and P.A. Schwarz's failure to prescribe a gluten-free diet amounted to a substantial departure from that standard

13

of care. Additionally, timing matters. If Dr. Sood and P.A. Schwarz knew about Plaintiff's celiac disease when Plaintiff first entered Stateville, then they subjectively knew of Plaintiff's condition, and whether they deliberately disregarded the medical risk of failing to prescribe a gluten-free diet becomes a material factual issue. If Dr. Sood and P.A. Schwarz only found out about Plaintiff's diagnosis in January 2018, then the only actions that matter for deliberate indifference occur once they became aware of Plaintiff's medical condition at that time. Therefore, a genuine issue of material fact exists, and summary judgment remains inappropriate at this stage.

### 2. Specialist Referral

The decision "to refer a prisoner to a specialist involves the exercise of medical discretion, and so refusal to refer supports a claim of deliberate indifference only if that choice is blatantly inappropriate." *Clemons*, 106 F.4th at 636 (quoting *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014)). If "'the need for specialized expertise either was known by the treating physicians or would have been obvious to a lay person, then the "obdurate refusal" to engage specialists' may raise an inference as to whether the medical provider was deliberately indifferent to the inmate's condition." *Id.* (quoting *Pyles*, 771 F.3d at 412). Here, again, the parties' expert opinions differ: Dr. Lawerence claims that the failure to refer Plaintiff to a specialist "represented an extreme deviation from the standard of care," [314] at 19, while Dr. Tubbs stated that the standard of care did not require a referral to a specialist. [264-5] 29:14–30:17.

Once Dr. Sood and P.A. Schwarz became aware of Plaintiff's celiac diagnosis, a reasonable jury could find that Defendants needed to inquire further about his

14

medical history to determine his need for a specialist. Dr. Sood admits, however, that he did not ask Plaintiff any follow up questions about his celiac disease. [264-3] 65:14–17. Therefore, Dr. Sood knew nothing of Plaintiff's previous diagnosis, testing, or medical consultations. Dr. Sood and P.A. Schwarz were only aware that Plaintiff had celiac and, thereafter, made no effort to determine whether Plaintiff needed a specialist or additional medical services.

Viewing the entire factual record (including Dr. Lawerence's expert opinion) in the light most favorable to Plaintiff, the Court rules that a reasonable jury could find that Defendants' failure to refer Plaintiff to a specialist extremely deviated from the standard of care, and that such conduct constituted deliberate indifference. Accordingly, summary judgment remains inappropriate.

### 3. Plaintiff's Medical History

Plaintiff also claims that Dr. Sood and P.A. Schwarz acted with deliberate indifference when they failed to obtain Plaintiff's previous medical records. Dr. Lawerence opined that "reviewing prior medical records is a vitally important and extremely basic aspect of the provision of medical care" and that the failure to obtain Plaintiff's records "represented an extreme deviation from the standard of care." [314] at 16, 17. P.A. Schwarz acknowledged that when patients have "stable conditions" there is less reason to request their medical records, but she also conceded that involvement with a specialist would provide a reason to obtain a patient's medical records. [264-2] 30:23–31:8. Dr. Sood likewise acknowledged the helpfulness of medical records, particularly when treating a patient with celiac disease. [264-3]

15

77:4–78:19. And while Dr. Tubbs stated, "it's best practice to review selected records" for a patient, he claimed that the medical standard did not require Dr. Sood or P.A. Schwarz to review or request Plaintiff's previous medical records in this factual situation. [264-5] 30:18–31:13.

The record clearly shows that Dr. Sood and P.A. Schwarz never requested Plaintiff's medical record, nor otherwise contacted any previous providers about his history. Had Dr. Sood and P.A. Schwarz requested and reviewed Plaintiff's medical records, they would have been in a better position to evaluate and treat Plaintiff. *See* [314] at 16. Once Plaintiff disclosed his celiac disease, P.A. Schwarz and Dr. Sood became aware that he had a chronic illness, specifically celiac disease, and likely a significant medical history. At that point, based upon Dr. Sood's and P.A. Schwarz's own articulations on the need for medical records, the standard of care indicated that the Wexford Defendants should request Plaintiff's previous records, but the relevant timing about when Plaintiff may have shared his celiac diagnosis with P.A. Schwarz and Dr. Sood remains disputed. At the very least, there exists a genuine dispute of material fact regarding whether Dr. Sood and P.A. Schwarz's failure to request Plaintiff's medical records radically departed from the accepted standard of care. Consequently, summary judgment remains inappropriate.

**IV. Conclusion**

For the reasons explained above, this Court grants the Warden Defendants' motion for summary judgment [260] and denies the Wexford Defendants' motion for summary judgment [263]. The Court directs the Clerk to enter judgment in favor of

16

the Warden Defendants. Plaintiff may proceed on his claim of deliberate indifference against the Wexford Defendants. The remaining parties shall file a joint status report within 30 days indicating whether they are interested in a settlement conference, and whether, as a deported litigant, Plaintiff expects to re-enter the country for trial or, if he cannot, whether the case can proceed to trial.

Dated: January 26, 2026

Entered:

_____
John Robert Blakey
United States District Judge